UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 24-01721-KK-SHKx** | Date: | November 3, 2025 |
|---|---|---|---|

| Title: | ***Adam Layne v. City of Hesperia et al.*** |
|---|---|

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Twyla Freeman | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (In Chambers) Order DENYING Defendant Matthew Carreon's Motion for Summary Judgment [Dkt. 55]**

## I.
## INTRODUCTION

On October 11, 2024, plaintiff Adam Layne ("Plaintiff") filed the operative First Amended Complaint ("FAC") under 42 U.S.C. § 1983 ("Section 1983") against defendants Matthew Carreon[1] ("Carreon") and Does 1 through 10.[2]  ECF Docket No. ("Dkt.") 15, FAC.  Plaintiff alleges defendant Carreon violated his Fourth Amendment right by using excessive force during an arrest.  See generally FAC.  On August 29, 2025, defendant Carreon filed the instant Motion for Summary Judgment ("Motion").  Dkt. 55, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. Local Rule 7-15.  For the reasons set forth below, the Motion is **DENIED**.

///

///

///

---

[1] Erroneously sued as Michal Carreon.  See Dkt. 21.

[2] City of Hesperia, the original defendant in this matter, is no longer listed as a defendant.

## II.
## BACKGROUND

### A.    PROCEDURAL HISTORY

On October 11, 2024, Plaintiff filed the operative FAC, alleging defendant Carreon violated the Fourth Amendment by using excessive force against Plaintiff during an arrest on September 8, 2023.  FAC ¶¶ 15-26.

On August 29, 2025, defendant Carreon filed the instant Motion for Summary Judgment claiming his use of force was constitutional and that he is entitled to qualified immunity.  See Mot. In support of the Motion, defendant Carreon filed a statement of undisputed facts, Dkt. 55-1, defendant Carreon's audio from the arrest, Dkt. 55-2, Ex. 3, Deputy Matthew Carreon's Audio Belt Recording ("Carreon Recording"), and defendant Carreon's declaration, Dkt. 55-3, Ex. 1, Decl. of Matthew Carreon ("Carreon Decl.").

On September 15, 2025, Plaintiff filed an Opposition.[3]  Dkt. 61, Opposition ("Opp.").  In support of the Opposition, Plaintiff filed a response to defendant Carreon's statement of undisputed facts, Dkt. 63, and deposition transcripts of Plaintiff's brother, Joshua Layne ("Joshua"), Dkt. 62, Ex. 1, Dep. of Joshua Layne ("Joshua Dep."), and defendant Carreon, Dkt. 62, Ex. 2, Dep. of Matthew Carreon ("Carreon Dep.").

On September 18, 2025, defendant Carreon filed a Reply, Dkt. 64, along with a response to Plaintiff's factual disputes, Dkt. 64-1, Response to Plaintiff's Statement of Genuine Issues ("SUMF"), and a supplemental declaration by counsel, Dkt. 64-2.[4]

This matter, thus, stands submitted.

### B.    MATERIAL FACTS

Unless otherwise indicated, the following facts are uncontroverted.  To the extent certain facts are not referenced in this Order, the Court has not relied on such facts to reach its decision.  In addition, the Court considers the parties' evidentiary objections only where necessary.  All other objections are **OVERRULED AS MOOT**.

On September 8, 2023, at approximately 1:30 p.m., Joshua woke up to his brother, Plaintiff, "banging" and "knocking" on his backdoor.  Joshua Dep. at 26.  Plaintiff, who lived in a recreational vehicle parked in Joshua's backyard, needed to use the bathroom and was upset with Joshua's unresponsiveness.  Id. at 22, 26.  Upon Joshua opening the door, Plaintiff "grabbed [Joshua's] shirt

---

[3] Defendant Carreon argues the Court should not consider Plaintiff's Opposition because it was filed within fourteen days of the Court's scheduled hearing date, in violation of the Local Rules. See Reply at 8-10; Dkt. 64-2.  While the Court is not pleased with Plaintiff's lack of diligence, the Court declines to strike the Opposition.  Plaintiff is nonetheless advised the Court will strike and/or impose sanctions for any future non-compliance with the Local Rules.

[4] Defendant Carreon has also filed evidentiary objections.  See Dkt. 64-3.  The Court need not reach these objections "because the Court does not rely on the objected-to evidence."  Wilson v. J.P. Allen Co., 57 F. Supp. 3d 1249, 1261 (C.D. Cal. 2014).

---

by the collar." Id. at 26. Joshua "pulled back" from Plaintiff, "closed the door," and "called the police" to avoid "escalat[ing] the situation." Id. at 27. Joshua told the 911 operator Plaintiff "assaulted" him and was now in the backyard yelling profanity. SUMF 3.

After calling the police, Joshua walked to the front yard and saw Plaintiff "sitting in a chair drinking a beer" and "blocking the entryway." Joshua Dep. at 28; see also SUMF 7, 15. The two talked "crap back and forth" as Joshua "disapprove[d] of [Plaintiff's use of] alcohol." Joshua Dep. at 28. Around 1:45 p.m., Joshua called 911 again, informing the operator he was now "inside his vehicle[] while Plaintiff was in the front yard threatening him." SUMF 4. Nearly forty-five minutes later, Plaintiff's mother called 911 stating "Plaintiff was still threatening Joshua and her," SUMF 6, and that she was "inside her vehicle waiting for the police to arrive," SUMF 8.

Defendant Carreon, a twenty-one-year-old San Bernardino County sheriff deputy, Carreon Dep. at 91, arrived at the scene around 2:31 p.m., see SUMF 5, 11. Upon arriving, Joshua told him Plaintiff was "under the influence" and "attacked him twice." Carreon Recording at 0:00:14. Defendant Carreon then approached Plaintiff, who was still on the front porch "drinking from a 40-ounce glass beer bottle," SUMF 15, and arguing with Joshua, SUMF 17. Plaintiff smelled of alcohol, Carreon Dep. at 95, had "bloodshot" eyes, id., and refused to drop his beer bottle as ordered by defendant Carreon, Carreon Recording at 0:00:40 ("Adam, I need you to put the bottle down."). Defendant Carreon urged Plaintiff to "calm down" and "explain what had occurred." SUMF 19.

Plaintiff explained he "threw a fit" because Joshua would not answer the door to the residence when Plaintiff needed to use the restroom. SUMF 20. He also told defendant Carreon about an outstanding arrest warrant. SUMF 23. Defendant Carreon confirmed Plaintiff had three warrants – for resisting arrest, public intoxication, and driving without a license – and told Plaintiff he was being detained. SUMF 24-25. Defendant Carreon planned to detain Plaintiff specifically "[d]ue to the warrants." Carreon Dep. at 97. As relevant, the conversation between Plaintiff and defendant Carreon was as follows:

> Carreon: Listen, Adam. Okay? You do have that misdemeanor
> warrant. Okay?
> Plaintiff: Okay.
> Carreon: So, what's going to happen right now--
> Plaintiff: Don't touch me yet.
> Carreon: What is going to happen right now--
> Plaintiff: No.
> Carreon: I'm going to place you in handcuffs--
> Plaintiff: No, you're not.
> Carreon: --and I'm going to take you to my patrol car.
> Plaintiff: No, you're not. No, you're not.
> Carreon: Yes. That has to--
> Plaintiff: No, you're not, because-- I'm not doing nothing wrong.
> Carreon: Adam, you have a misdemeanor warrant out for your arrest.

Carreon Recording at 0:06:38-56.

Similar conversation took place for the next few minutes. Id. at 0:06:57-9:55. Ten minutes in, defendant Carreon called for "another unit." Carreon Dep. at 107. Seconds later, Plaintiff, who

was still sitting down, told defendant Carreon he would comply "after [he was] done with [his] beer." Carreon Recording at 0:10:06. The following conversation subsequently occurred:

> Plaintiff: Don't put handcuffs on me. I will go in your car. Okay?
> Carreon: I have to place handcuffs on you--
> Plaintiff: No.
> Carreon: per policy. Anyone who goes in the backseat is going in handcuffs. Okay?
> Plaintiff: No. Then it's not going to happen. It's not going to happen.
> Carreon: Go ahead and stand up, Adam.
> Plaintiff: Nope. I'm right here. So, it's going to be forcibly. And that will be on you and your team.
> Carreon: You got to stand up, Adam.
> Plaintiff: Nope. Call my lawyer. I need a lawyer!
> Carreon: If you push this any further, Adam, it's not going to go well for you man.

Id. at 0:10:27-55.

For the next couple of minutes, Plaintiff continued ignoring defendant Carreon's "orders to stand up from the chair," SUMF 27, and also "began using profanities towards [defendant] Carreon," SUMF 30. "[I]n hopes [Plaintiff] would comply and stand up," Carreon Dep. at 97, defendant Carreon next "placed both [his] hands on Plaintiff's left arm," SUMF 31, and "attempted to place [Plaintiff's] arms behind his back," Carreon Dep. at 97. Plaintiff repeatedly moved his arm away from defendant Carreon, see Carreon Recording at 0:12:28, despite being told to "stop flexing," SUMF 33. At this point, Joshua, standing ten feet away, Joshua Dep. at 34, asked defendant Carreon if he could "call another officer." Carreon Recording at 0:12:46. Defendant Carreon did not respond to this request and instead continued grabbing Plaintiff's arm, see id. at 0:12:55, and commanded him to "relax" and "stand up," SUMF 34. Thirty seconds later, Plaintiff "flex[ed] his [left] arm" free from defendant Carreon's grip, put his beer down, and "stood up voluntarily." Carreon Dep. at 97, 100; see also SUMF 35. Defendant Carreon did not see any sign of weapons on Plaintiff's person. Carreon Dep. at 108.

The parties dispute what happened next. According to defendant Carreon, Plaintiff clenched his right fist and raised his arm "in an L formation" while standing up. Carreon Dep. at 100; see also SUMF 39. From the positioning of Plaintiff's arm, defendant Carreon feared Plaintiff "was going to punch him in the face." SUMF 40. However, Joshua claims Plaintiff never "act[ed] like he was going to hit" defendant Carreon. Joshua Dep. at 54; see also SUMF 40. Joshua further claims he observed defendant "[take Plaintiff's] arm and crank[] it up."[5] Joshua Dep. at 53.

Both parties are in accord, however, that defendant Carreon used force to detain Plaintiff. SUMF 40. Specifically, defendant Carreon grabbed Plaintiff's left arm "like a [baseball] bat," "turn[ed] [his] left hip towards [Plaintiff]," and "pull[ed] his arm in a downward motion," causing

---

[5] The audio is inconclusive on this issue, though struggling can be heard, see Carreon Recording at 0:13:45-57.

Plaintiff to "flip [] over [defendant Carreon's] left hip."  Carreon Dep. at 101; see also SUMF 40.
Defendant Carreon learned this "hip toss" move in his high school wrestling program.  Carreon
Dep. at 91-92.  Defendant Carreon learned two other tactics for controlling resistant detainees while
in the police academy but did not use them.  Id. at 93.

The parties also dispute what happened after the hip-toss.  SUMF 46.  According to
defendant Carreon, Plaintiff fell "on his right side" in the dirt and defendant Carreon "mounted him
on his left hip."  Carreon Dep. at 104.  Defendant Carreon claims he did not "strike, punch, or kick"
Plaintiff while he was on the ground.  Carreon Decl. ¶ 10.  Plaintiff, on the other hand, claims "[h]e
fell face first" on the concrete entryway and that defendant Carreon subsequently landed "on top of
him" with "all his body weight."  Joshua Dep. at 53-54.  Plaintiff further claims that defendant
Carreon "smashed" his knee into Plaintiff's back while holding Plaintiff's arms with one hand and
punching Plaintiff's ribs with the other.[6]  Id. at 34-35.  It is undisputed that Plaintiff did not move
while he was on the ground, Carreon Dep. at 104, and screamed for close to thirty seconds after
landing, Carreon Recording at 0:13:59-14:38.

At least two backup officers arrived twenty-five seconds after defendant Carreon hip-tossed
Plaintiff.  See Carreon Dep. at 106; Carreon Recording at 0:14:15.  Medical services were called to
treat Plaintiff's visibly dislocated elbow.  SUMF 43.  Plaintiff never had surgery, see Joshua Dep. at
51, but did begin using a sling and a wheelchair, id. at 22.

### III.
### LEGAL STANDARD

Summary judgment is appropriate when the moving party shows they are "entitled to
judgment as a matter of law" and "that there is no genuine dispute as to any material fact."  Fed. R.
Civ. P. 56(a).  "A material fact is one that is needed to prove (or defend against) a claim," and such a
fact is genuinely disputed "if the evidence is such that a reasonable jury could return a verdict for the
nonmoving party."  Damiano v. Grants Pass Sch. Dist. No. 7, 140 F.4th 1117, 1136 (9th Cir. 2025)
(citation modified).

---

[6] Defendant Carreon urges the Court not to consider these facts because Plaintiff did not
raise them in the FAC.  See Reply at 17.  While a plaintiff may not "turn around and surprise the
defendant at the summary judgment stage with a completely different theory," Hartzell v. Marana
Unified Sch. Dist., 130 F.4th 722, 744 (9th Cir. 2025) (citation modified), they may "rely on [unpled]
additional facts . . . support[ing] the same theory of liability alleged in the complaint," Cal. Clovis,
LLC v. Sierra Vista Realty LLC, 634 F. Supp. 3d 881, 892 (E.D. Cal. 2022).  Here, Plaintiff raises a
claim for excessive force, alleging:

> [Defendant Carreon] assault[ed] and batter[ed] Plaintiff by acts which
> included, but were not limited to, repeatedly and severely punching
> Plaintiff . . . multiples times and slamming Plaintiff's body to the
> ground with great force, resulting in severe blunt force trauma to
> Plaintiff's torso, arm, and head.

FAC ¶ 11.  Though Plaintiff did not precisely allege he was kneed in his back, his allegations that he
was assaulted and battered, along with the other allegations, gave defendant Carreon "fair notice of
what [Plaintiff's] claim is and the grounds upon which it rests."  Pickern v. Pier 1 Imports (U.S.),
Inc., 457 F.3d 963, 968 (9th Cir. 2006) (citation modified) (quoting Swierkiewicz v. Sorema N.A.,
534 U.S. 506, 512 (2002)).  Accordingly, the Court rejects this argument.

---

The party moving for summary judgment bears the initial burden of "identifying those
portions of the pleadings, discovery[,] and affidavits which demonstrate the absence of a genuine
issue of material fact." <u>Oliver v. Baca</u>, 913 F.3d 852, 858 (9th Cir. 2019) (citation modified) (quoting
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  The burden then shifts to the non-moving party
to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for
trial." <u>Celotex Corp.</u>, 477 U.S. at 324 (citation modified) (quoting Fed. R. Civ. P. 56(e)).  The non-
moving party "must do more than simply show that there is some metaphysical doubt as to the
material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

**IV.**
**<u>DISCUSSION</u>**

**A.    GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER
       DEFENDANT CARREON VIOLATED THE FOURTH AMENDMENT**

**1.    Applicable Law**

The Fourth Amendment demands officers to use force that is "objectively reasonable in
light of the facts and circumstances confronting them." <u>Graham v. Connor</u>, 490 U.S. 386, 397
(1989) (citation modified).  In assessing reasonableness, courts consider (1) "the severity of the
intrusion on the individual's Fourth Amendment rights," (2) "the government's interest in the use of
force," and (3) "the balance between the gravity of the intrusion on the individual and the
government's need for that intrusion." <u>Scott v. Smith</u>, 109 F.4th 1215, 1223 (9th Cir. 2024) (citation
modified); <u>see also</u> <u>Barnes v. Felix</u>, 605 U.S. 73, 79 (2025) (taking "due account of both the
individual interest and the governmental interests at stake").  However, "[t]here is no easy-to-apply
legal test or on/off switch in this context." <u>Barnes</u>, 605 U.S. at 80 (citation modified) (quoting <u>Scott
v. Harris</u>, 550 U.S. 372, 382-83 (2007)).  Hence, this analysis "nearly always requires a jury to sift
through disputed factual contentions," and "summary judgment in excessive force cases should be
granted sparingly." <u>Scott</u>, 109 F.4th at 1222-23 (citation modified); <u>accord</u> <u>Rosenbaum v. City of
San Jose</u>, 107 F.4th 919, 924 (9th Cir. 2024) ("Where factual disputes exist as to the objective
reasonableness of an officer's conduct, the case cannot be resolved at summary judgment on
qualified immunity grounds.").

**2.    Analysis**

For the reasons below, genuine disputes of material fact exist as to whether defendant
Carreon violated the Fourth Amendment.

**a.    Severity of the Intrusion**

With respect to the severity of the intrusion, "we consider 'the type and amount of force
inflicted' against him." <u>Sanderlin v. Dwyer</u>, 116 F.4th 905, 914 (9th Cir. 2024) (quoting <u>Young v.
Cnty. of Los Angeles</u>, 655 F.3d 1156, 1161 (9th Cir. 2011)).  "The greater the risk of harm and the
actual harm involved, the greater the governmental interest must be to justify the use of force."
<u>Sabbe v. Washington Cnty. Bd. of Comm'rs</u>, 84 F.4th 807, 821 (9th Cir. 2023).

Here, defendant Carreon's uses of force were substantial.  First, it is undisputed that defendant Carreon hip-tossed Plaintiff to the ground and dislocated his left arm.  SUMF 40.  His actions caused serious injury and, thus, constituted a significant use of force.  See Andrews v. City of Henderson, 35 F.4th 710, 716 (9th Cir. 2022) ("A physical tackle that results in severe injury may constitute a significant use of force.").

Second, while disputed, Plaintiff has also presented evidence that defendant Carreon kneed him in the back and rabbit punched his ribs after Plaintiff landed on the ground from the hip-toss.  SUMF 46; Joshua Dep. at 34 ("[Defendant Carreon] had his knee in [Plaintiff's] back as hard as he could, and he's hitting [Plaintiff] in the ribs with his rabbit punches.").  Thus, viewing the evidence most favorably to Plaintiff, defendant Carreon's additional use of force was also significant.  See Young, 655 F.3d at 1161 ("[Blows] capable of inflicting significant pain and causing serious injury . . . present a significant intrusion upon an individual's liberty interests.").

Accordingly, due to the degree of force exercised by defendant Carreon, a greater governmental interest must be demonstrated to justify the use of force.  Rice v. Morehouse, 989 F.3d 1112, 1121 (9th Cir. 2021) (requiring an officer's use of force "be justified by the need for the specific level of force employed" (quoting Bryan v. MacPherson, 630 F.3d 805, 825 (9th Cir. 2010))).

### b.    The Governmental Interests

Quantifying the governmental interests involves assessing the "severity of the crime prompting the stop," "actions the officer took during the stop," and "the stopped person's conduct."  Barnes, 605 U.S. at 80 (citation modified).

### i.    Severity of the Crime

Here, the severity of the crimes at issue was minimal.  While defendant Carreon argues the crime at issue was a serious domestic violence call, Mot. at 11-12, the relevant question is not the crime to which the officer responds.  See Bernal v. Sacramento Cnty. Sheriff's Dep't, 73 F.4th 678, 692 (9th Cir. 2023) (citing Mattos for the rule that the "crime at issue" is the "alleged crime . . . rather than the crime . . . to which police responded").  Defendant Carreon testified he detained Plaintiff "[d]ue to the warrants."  Carreon Dep. at 98.  Specifically, Plaintiff had outstanding warrants for resisting arrest, public intoxication, and driving with a suspended license.  SUMF 24.  Hence, the crimes at issue were minor, non-violent misdemeanors "that justifie[d], at most, only a minimal use of force."  Nelson v. City of Davis, 685 F.3d 867, 880 (9th Cir. 2012); see also, e.g., Young, 655 F.3d at 1165 ("[N]on-violent misdemeanor offense[s] [] will tend to justify force in far fewer circumstances."); Shafer v. Cnty. of Santa Barbara, 868 F.3d 1110, 1116 (9th Cir. 2017) ("The jury could conclude, based on the fact that Shafer was suspected of committing only a misdemeanor, that [the officer's] leg sweep maneuver was excessive under the circumstances.").

### ii.    Plaintiff's Conduct

With respect to the plaintiff's conduct, courts focus on "whether the suspect pose[d] an immediate threat to the safety of the officers or others" and "whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  Scott, 109 F.4th at 1224 (citation modified).

Here, the parties dispute Plaintiff's conduct immediately prior to defendant Carreon's use of force. See SUMF 38-40. However, viewing the evidence in the light most favorable to Plaintiff, a reasonable factfinder could determine Plaintiff's conduct warranted minimal force. Most importantly, Plaintiff presents evidence that he posed no "immediate danger to the [deputy] or others." Scott, 109 F.4th at 1224 ("The 'most important' factor is whether the suspect posed an immediate threat." (citation modified)). While defendant Carreon responded to a call for threats and domestic violence at 2:24 p.m., SUMF 5, defendant Carreon did not use force to detain Plaintiff until 2:47 p.m., see SUMF 35, 40. At that time, Plaintiff made no threatening actions toward defendant Carreon, or anyone else for that matter. See generally Carreon Recording. Further, while Plaintiff was admittedly intoxicated, he was never violent. See Winterrowd v. Nelson, 480 F.3d 1181, 1185 (9th Cir. 2007) (holding that a "belligerent attitude" "would not justify the deliberate infliction of pain"); cf. Gregory v. Cnty. of Maui, 523 F.3d 1103, 1106-07 (9th Cir. 2008) (opining that use of force was reasonable where the plaintiff "was under the influence of drugs," "acted in a bizarre manner throughout the confrontation," "[held] a pen with its point facing toward them," and "repeatedly and expressly refused to . . . disarm him[self]"). Instead, Plaintiff sat in a chair during most of the encounter and, at most, flexed his arm away from defendant Carreon. Although defendant Carreon argues Plaintiff posed a threat by raising his arms and clenching his fist, Plaintiff disputes that fact. SUMF 39. Hence, viewing the facts most favorably to Plaintiff, Plaintiff did not pose an immediate threat.

Second, viewing the evidence in the light most favorable to Plaintiff, Plaintiff did not "actively resist[]" nor attempt to flee. Scott, 109 F.4th at 1224. Plaintiff may have consistently refused to comply with defendant Carreon's commands, but Plaintiff never "attack[ed] the officer[] or anyone else." Id. at 1225; accord Singh v. City of Phoenix, 124 F.4th 746, 753 (9th Cir. 2024) ("[T]he crux of the resistance was the refusal to follow officers' commands, rather than actively attacking or threatening officers or others." (citation modified)). Indeed, the most Plaintiff did was pull his shoulder away from defendant Carreon and ask not to be touched. Joshua Dep. at 39; see also Carreon Dep. at 104 (testifying that "[t]here was no further movement of Adam" after he was hip-tossed). Thus, Plaintiff's conduct, albeit imperfect, is "closer to [] passive resistance" than "to truly active resistance." Bryan, 630 F.3d at 830.

### iii.    Defendant Carreon's Conduct

Because the excessive force inquiry "requires assessing the totality of the circumstances," courts must also look to the officer's conduct, "such as giving warnings or otherwise trying to control the encounter." Barnes, 605 U.S. at 76, 80; see also Seidner v. de Vries, 39 F.4th 591, 599 (9th Cir. 2022) (considering whether the officer had "less intrusive alternatives" or gave "proper warnings before force was used" (citation modified)).

Here, defendant Carreon's conduct weighs in favor of neither party. It appears defendant Carreon exercised due diligence by "independently evaluat[ing]" Joshua's domestic violence allegations upon arriving to the scene, Rice, 989 F.3d at 1122, and also waited nearly fifteen minutes before using force, cf. A.K.H. ex rel. Landeros v. City of Tustin, 837 F.3d 1005 (9th Cir. 2016) (factoring that the officer resorted to force "less than a minute" after encountering the plaintiff). Further, defendant Carreon appears to have given some indication he would resort to force if Plaintiff continued to defy his commands. Carreon Recording at 0:10:50-54 ("You push this any further, Adam, it's not going to go well for you, man.").

However, defendant Carreon did not consider the "variety of less intrusive options at his disposal." <u>Young</u>, 655 F.3d at 1165.  For example, defendant Carreon could have: (1) explicitly "warned [Plaintiff] that disobedience would lead [] to [using] force against him," <u>id.</u>; (2) waited for the backup he had already called, Carreon Dep. at 107; (3) escorted Plaintiff without handcuffing him; or (4) employed a less violent takedown method, such as the elbow pain compliance method he learned during police academy, <u>id.</u> at 93.  Instead, defendant Carreon chose to act without waiting for back-up and employed a martial arts technique he learned in high school and used in the military, i.e., not a tactic he was trained to use as law enforcement.  <u>Id.</u> at 91-92, 102.  While "officers need not avail themselves of the least intrusive means of responding to an exigent situation," "their failure to consider clear, reasonable and less intrusive alternatives to the force employed militates against finding the use of force reasonable." <u>Rice</u>, 989 F.3d at 1124 (citation modified).

### c.       Balancing the Interests

In weighing the relevant factors, a reasonable jury could conclude that defendant Carreon's force was unreasonable.  <u>See</u> <u>Scott</u>, 109 F.4th at 1225 ("Force is permissible only when a strong government interest <u>compels</u> the degree of force used." (citation modified)).  In particular, viewing all evidence in the light most favorable to Plaintiff, a factfinder could conclude defendant Carreon hip-tossed Plaintiff to the ground and then pushed his knee into Plaintiff's back and punched Plaintiff's ribs to effectuate an arrest for non-violent misdemeanors when Plaintiff posed no threat of immediate danger and was not actively resisting.  A reasonable fact-finder could also find this use of force caused severe injury and was further unreasonable in light of the failure to explore a less intrusive alternative.

Accordingly, taking the facts most favorably to Plaintiff, "a jury could conclude that [defendant Carreon] used excessive force in violation of the Fourth Amendment."[7]  <u>Rice</u>, 989 F.3d at 1123 (citation modified).

## B.      DEFENDANT CARREON IS NOT ENTITLED TO QUALIFIED IMMUNITY

### 1.       Applicable Law

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." <u>Taylor v. Riojas</u>, 592 U.S. 7, 8 (2020).  A summary judgment motion on qualified immunity grounds thus poses two questions.  First, "taken in the light most favorable to the party asserting the injury, [whether] the facts alleged show the officer's conduct violated a constitutional

---

[7] Defendant Carreon additionally argues his use of force was based on a "factual mistake" that "Plaintiff posed an immediate threat."  Opp. at 21.  "When an officer's use of force is based on a mistake of fact, we ask whether a reasonable officer would have or <u>should</u> have accurately perceived that fact." <u>Napouk v. L.V. Metro. Police Dep't</u>, 123 F.4th 906, 915-16 (9th Cir. 2024) (citation modified).  As explained above, based upon the disputed evidence, a reasonable factfinder could conclude defendant Carreon could not have reasonably misconstrued that Plaintiff posed an immediate threat because Plaintiff was never violent, made no threats, and never acted like he was going to hit defendant Carreon.  Accordingly, the Court rejects this argument.  <u>See</u> <u>D'Braunstein v. Cal. Highway Patrol</u>, 131 F.4th 764, 772 (9th Cir. 2025) (citation modified) ("[I]t sometimes proves necessary for a jury to determine first whether the mistake was, in fact, reasonable.").

right." <u>Rice</u>, 989 F.3d at 1120.  Second, "whether the right was clearly established in light of the specific context of the case." <u>Id.</u>

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" <u>Rivas-Villegas v. Cortesluna</u>, 595 U.S. 1, 5 (2021) (quoting <u>Mullenix v. Luna</u>, 577 U.S. 7, 11 (2015) (<u>per curiam</u>)).  Though a case need not be "directly on point" to establish a right, "existing precedent must have placed the . . . constitutional question beyond debate." <u>Id.</u> (citation modified).  Further, because Fourth Amendment cases are so fact-intensive, the general test for excessive force can "clearly establish" law "in an obvious case." <u>Id.</u> at 6 (citation modified).  In all other cases, however, the plaintiff "must identify a case that put [the officer] on notice that his specific conduct was unlawful," <u>id.</u>, and the court must make an "effort to explain how that case law prohibit[s] [the officer's] actions," <u>City of Escondido v. Emmons</u>, 586 U.S. 38, 43 (2019).

**2.      Analysis**

Here, defendant Carreon is not entitled to qualified immunity.  First, as found above, a reasonable jury could find defendant Carreon's action violated Plaintiff's Fourth Amendment right to be free from the unreasonable use of force.

With respect to the second prong, defendant Carreon argues it was not clearly established that "performing a takedown maneuver on an intoxicated, non-compliant suspect who is actively resisting arrest" was unlawful.  Mot. at 19.  As explained above, there is a genuine issue of material dispute as to whether Plaintiff was "actively resisting arrest." <u>See</u> SUMF 38-40.

Moreover, viewing the facts most favorably to Plaintiff, it was clearly established that defendant Carreon's conduct – violently taking down a threatless and passively resistant misdemeanant – was unconstitutional. <u>See, e.g.</u>, <u>Gravelet-Blondin v. Shelton</u>, 728 F.3d 1086, 1093 (9th Cir. 2013) ("The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008.").  The Ninth Circuit's <u>Rice</u> decision is particularly instructive.  868 F.3d 1110.  There, officers responded to a "life-or-death alert" that was later "downgraded" to a call for a noncompliant arrestee. <u>Id.</u> at 1112.  Upon arrival, officers executed a takedown maneuver by "tripp[ing] and 'forcibly' throw[ing]" the plaintiff "to the ground, face-first onto the pavement," resulting in "long-term physical pain." <u>Id.</u> at 1121.  A "scrum" followed, during which the "officers repeatedly struck and kneed [Rice], wrenched his arms and shoulders, and twisted his fingers." <u>Id.</u> at 1117.  Accepting Rice's version of the facts, the Ninth Circuit concluded a reasonable jury could find the officers used excessive force based on several facts: (1) the "take-down maneuver involved 'substantial' force that resulted in forcibly throwing Rice face-first to the pavement," (2) "Rice's behavior did not constitute an immediate threat," (3) the alleged crime "did not support the use of a significant level of force," (4) Rice did not "active[ly] resist[]," and (5) the "officers failed to attempt a less intrusive alternative." <u>Id.</u> at 1124.  Here, Plaintiff's case parallels <u>Rice</u>.  Hence, based on <u>Rice</u>, the law is clear that it is unconstitutional for an officer to carry out an unnecessarily violent takedown maneuver on a passively resistant individual who was not suspected of a serious offense and did not pose an immediate threat – especially when that officer fails to attempt a less intrusive alternative. <u>Id.</u> at 1116-17.  Thus, viewing the facts in the light most favorable to Plaintiff, defendant Carreon was "fairly on notice" that his use of force under the facts presented by Plaintiff was unconstitutional. <u>Scott</u>, 109 F.4th at 1227.

Defendant Carreon's counter arguments fail to meaningfully distinguish <u>Rice</u>. He first contrasts the number of officers involved: just him compared to the "swarm of officers . . . in <u>Rice</u>." Reply at 21. However, only two officers in <u>Rice</u> conducted the takedown maneuver. <u>Rice</u>, 989 F.3d at 1117. Moreover, even assuming this distinction, it is hardly material – a solo takedown is no better than a group tackle if such force and the resulting serious injury would be disproportional to the threat posed. Second, defendant Carreon seeks to distinguish passive resistance from active resistance. Reply at 21. However, when viewing the facts most favorably to Plaintiff, a jury could conclude that Plaintiff did not actively resist defendant Carreon.[8] <u>See</u> SUMF 39.

Defendant Carreon cites two cases in which the Ninth Circuit ruled there was no violation of a clearly established right.[9] Reply at 28-30. In <u>O'Doan v. Sanford</u>, officers inflicted "minor" injuries after using a "modest deployment of force" against a man who "fail[ed] to follow lawful commands" and "[made] threatening gestures." 991 F.3d 1027, 1037 (9th Cir. 2021). In <u>Smith v. Chino Valley</u>, officers used force against an individual with a "mental disorder" who posed "a sufficient threat to himself" and "bent" one of the officers' fingers during a physical struggle. No. CV-21-08009-PCT-MTL-JZB, 2023 WL 5000631, at *8-9 (D. Ariz. Aug. 4, 2023), <u>aff'd sub nom.</u> <u>Smith v. Town of Chino Valley</u>, No. 23-2142, 2025 WL 817422 (9th Cir. Mar. 14, 2025). Among other notable differences, both cases are unpersuasive because there are genuine disputes of material fact as to whether Plaintiff posed a threat to defendant Carreon or others.

Accordingly, defendant Carreon's motion for summary judgment based on qualified immunity is **DENIED**.

///

---

[8] Defendant Carreon similarly fails to materially distinguish <u>Santos v. Gates</u>, 287 F.3d 846 (9th Cir. 2002). The officers in <u>Santos</u> used a violent takedown maneuver against a mentally ill man who was suspected of public intoxication, "did not pose a significant or immediate safety risk," and did not "actively resist[] arrest." <u>Id.</u> at 853. Given the similar circumstances and use of force, <u>Santos</u> also put defendant Carreon "fairly on notice" that his use of force was excessive. <u>Scott</u>, 109 F.4th at 1227.

[9] Defendant Carreon cites three other cases that warrant little discussion because they involve "tense, uncertain, and rapidly evolving" circumstances, <u>Graham</u>, 490 U.S. at 396. <u>See, e.g.</u>, <u>Emmons v. City of Escondido</u>, 168 F. Supp. 3d 1265, 1276 (S.D. Cal. 2016) (finding reasonable force where officers "perform[ed] a welfare check" and were unaware "whether [the plaintiff] presented a security threat or whether injured individuals were inside the apartment"), <u>aff'd in part</u>, 716 F. App'x 724 (9th Cir. 2018), <u>vacated by sub nom.</u> <u>Emmons</u>, 586 U.S. 38, and <u>aff'd</u>, 921 F.3d 1172 (9th Cir. 2019); <u>Luchtel v. Hagemann</u>, 623 F.3d 975, 982 (9th Cir. 2010) (affirming qualified immunity where the plaintiff behaved in a "violent, aggressive, and unpredictable" manner and "exhibit[ed] superhuman strength" while under the influence); <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 652-53 (9th Cir. 2001) (affirming qualified immunity where the plaintiff was part of a disobedient group that "substantially outnumbered" the officers and engaged in "a melee"). <u>Emmons</u> is especially a mismatch given that the plaintiff there merely "testified that he was tackled to the ground" rather than "body-slammed" and "provide[d] no further description of the events leading to" the tackle. 168 F. Supp. 3d at 1275-77. In addition, the Ninth Circuit's conclusion that Emmons actively resisted arrest, <u>Emmons</u>, 921 F.3d at 1175, is inapposite here because, as explained earlier, Plaintiff genuinely disputes the level of resistance against defendant Carreon, Opp. at 10 ("[Plaintiff] was, at most, only engaging in passive resistance.").

## V.
## CONCLUSION

For the reasons set forth above, defendant Matthew Carreon's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**.